WEBSTER, Judge.
These consolidated appeals present a number of novel questions regarding interpretation of portions of chapter 766 Florida Statutes (1993), which deals with medical malpractice. Following a notice of intent to initiate medical malpractice litigation sent by counsel for appellees to appellants, appellants, through counsel, offered to admit liability and to submit to voluntary binding arbitration of the amount of appellees’ damages. Appellees accepted that offer, and the matter was eventually heard by a panel of three arbitrators. Following an award of substantial damages by the arbitrators, appellees sought circuit court confirmation of the award, to which appellants objected on jurisdictional grounds. The circuit court denied appellants’ motion to dismiss; denied a motion by appellees to join appellants’ liability insurer; confirmed the arbitration award, but denied appellees’ request for entry of a final judgment; and held that, notwithstanding purchase by appellants of an annuity to secure periodic payments of future economic damages, appellants would remain contingently liable for the future economic damages awarded, and subject to entry of a judgment against them should any of the future payments not be timely made.
Appellants now raise three issues: whether the circuit court erred (1) when it denied their motion to dismiss, for lack of subject matter jurisdiction, appellees’ motion to confirm the arbitration award and, (2) when it held that they would remain contingently liable for payments of future economic damages, notwithstanding purchase by them of an acceptable annuity assuring that those payments would be made; and (3) whether the arbitrators’ order setting the discount rate and the calculation date for future economic damages was impermissibly predicated *1193 upon an unauthorized consideration of new evidence. By cross-appeal, appellees raise two issues: whether the circuit court erred (1) when it declined to issue a final judgment against appellants and, (2) when it denied their motion to join appellants’ liability insurer. We affirm as to all of the issues raised by appellants; and reverse as to both of the issues raised by appellees.
The substance of section 766.106, Florida Statutes (1993), was originally enacted as a part of the Comprehensive Medical Malpractice Reform Act of 1985. Ch. 85-175, § 14, at 1199-1202, Laws of Fla. Among its provisions is one which permits “an offer of admission of liability and for arbitration on the issue of damages” in response to a notice of intent to initiate medical malpractice litigation. § 766.106(3)(b)3., Fla.Stat. (1993). The procedure for arbitration upon acceptance of such an offer is set out in subsections (10) through (12). To the extent relevant, those provisions read:
(10)If a prospective defendant makes an offer to admit liability and for arbitration on the issue of damages, the claimant has 50 days from the date of receipt of the offer to accept or reject it.... If the claimant rejects the offer, he may then file suit. Acceptance of the offer of admission of liability and for arbitration waives recourse to any other remedy by the parties ....
(a) If rejected, the offer to admit liability and for arbitration on damages is not admissible in any subsequent litigation....
(b) If the offer to admit liability and for arbitration on damages is accepted, the parties have 30 days from the date of acceptance to settle the amount of damages. If the parties have not reached agreement after 30 days, they shall proceed to binding arbitration to determine the amount of damages as follows:
1. Each party shall identify his arbitrator to the opposing party not later than 35 days after the date of acceptance.
2. The two arbitrators shall, within 1 week after they are notified of their appointment, agree upon a third arbitrator. If they cannot agree on a third arbitrator, selection of the third arbitrator shall be in accordance with chapter 682 [the Florida Arbitration Code].
3. Not later than 30 days after the selection of a third arbitrator, the parties shall file written arguments with each arbitrator and with each other indicating total damages.
4. Unless otherwise determined by the arbitration panel, within 10 days after the receipt of such arguments, unless the parties have agreed to a settlement, there shall be a 1-day hearing, at which formal rules of evidence and the rules of civil procedure shall not apply, during which each party shall present evidence as to damages. Each party shall identify the total dollar amount which he feels should be awarded.
5. No later than 2 weeks after the hearing, the arbitrators shall notify the parties of their determination of the total award. The court shall have jurisdiction to enforce any award or agreement for periodic payment of future damages.
(11) If there is more than one prospective defendant, the claimant shall provide the notice of claim and follow the procedures in this section for each defendant. If an offer to admit liability and for arbitration is accepted, the procedures shall be initiated separately for each defendant, unless multiple offers are made by more than one prospective defendant and are accepted and the parties agree to consolidated arbitration. Any agreement for consolidated arbitration shall be filed with the court. No offer by any prospective defendant to admit liability and for arbitration is admissible in any civil action.
(12) To the extent not inconsistent with this part, the provisions of chapter 682, the Florida Arbitration Code, shall be applicable to such proceedings.
In 1988, the legislature again turned its attention to medical malpractice, enacting major amendments to what is now chapter 766. Ch. 88-1, §§ 48-87, at 164-86, Laws of Fla.; ch. 88-277, §§ 26-49, at 1473-95, Laws of Fla. While these amendments changed some portions of what is now section 766.106 and added additional subsections, the sub *1194 stance of the provisions relating to admission of liability and voluntary binding arbitration of damages remained unchanged. However, the legislature also adopted a completely separate set of procedures for admission of liability and voluntary binding arbitration of damages. Ch. 88-1, §§ 54-59, at 169-73, Laws of Fla.; ch. 88-277, §§ 30-35, at 1476-82, Laws of Fla. Those provisions were subsequently codified as sections 766.207 through 766.212, Florida Statutes (1993). While the motivation for enactment of those provisions is explained in section 766.201(2)(b), no reference is made to the provisions regarding admission of liability and voluntary binding arbitration of damages already set forth in section 766.106, or to the intended interplay, if any, between section 766,106 and sections 766.207 through 766.212. Section 766.201(2)(b) reads, in relevant part:
(2)It is the intent of the Legislature to provide a plan for prompt resolution of medical negligence claims. Such plan shall consist of two separate components, pre-suit investigation and arbitration_ Arbitration shall be voluntary and shall be available except as specified.
[[Image here]]
(b) Arbitration shall provide:
1. Substantial incentives for both claimants and defendants to submit their cases to binding arbitration, thus reducing attorney’s fees, litigation costs, and delay.
2. A conditional limitation on noneco-nomic damages where the defendant concedes willingness to pay economic damages and reasonable attorney’s fees.
3. Limitations on the noneconomic damages components of large awards to provide increased predictability of outcome of the claims resolution process for insurer anticipated losses planning, and to facilitate early resolution of medical negligence claims.
To the extent relevant, sections 766.207 through 766.212, Florida Statutes (1993), read:
766.207 Voluntary binding arbitration of medical negligence claims.—
[[Image here]]
(2) Upon the completion of presuit investigation with preliminary reasonable grounds for a medical negligence claim intact, the parties may elect to have damages determined by an arbitration panel. Such election may be initiated by either party by serving a request for voluntary binding arbitration of damages within 90 days after service of the claimant’s notice of intent to initiate litigation upon the defendant. The evidentiary standards for voluntary binding arbitration of medical negligence claims shall be as provided in s. 120.58(l)(a) [part of the Administrative Procedure Act],
(3) Upon receipt of a party’s request for such arbitration, the opposing party may accept the offer of voluntary binding arbitration within 30 days_ Such acceptance within the time period provided by this subsection shall be a binding commitment to comply with the decision of the arbitration panel. The liability of any insurer shall be subject to any applicable insurance policy limits.
(4) The arbitration panel shall be composed of three arbitrators, one selected by the claimant, one selected by the defendant, and one an administrative hearing officer furnished by the Division of Administrative Hearings who shall serve as the chief arbitrator. In the event of multiple plaintiffs or multiple defendants, the arbitrator selected by the side with multiple parties shall be the choice of those parties. If the multiple parties cannot reach agreement as to their arbitrator, each of the multiple parties shall submit a nominee, and the director of the Division of Administrative Hearings shall appoint the arbitrator from among such nominees.
(5) The arbitrators shall be independent of all parties, witnesses, and legal counsel....
[[Image here]]
(7) Arbitration pursuant to this section shall preclude recourse to any other remedy by the claimant against any participating defendant, and shall be undertaken with the understanding that:
(a) Net economic damages shall be awardable, including, but not limited to, *1195 past and future medical expenses and 80 percent of wage loss and loss of earning capacity, offset by any collateral source payments.
(b) Noneconomic damages shall be limited to a maximum of $250,000 per incident, and shall be calculated on a percentage basis with respect to capacity to enjoy life, so that a finding that the claimant’s injuries resulted in a 50-percent reduction in his capacity to enjoy life would warrant an award of not more than $125,000 noneco-nomic damages.
(c) Damages for future economic losses shall be awarded to be paid by periodic payments pursuant to s. 766.202(8) and shall be offset by future collateral source payments.
(d) Punitive damages shall not be awarded.
(e) The defendant shall be responsible for the payment of interest on all accrued damages with respect to which interest would be awarded at trial.
(f) The defendant shall pay the claimant’s reasonable attorney’s fees and costs, as determined by the arbitration panel, but in no event more than 15 percent of the award, reduced to present value.
(g) The defendant shall pay all the costs of the arbitration proceeding and the fees of all the arbitrators other than the administrative hearing officer.
(h) Each defendant who submits to arbitration under this section shall be jointly and severally liable for all damages assessed pursuant to this section.
(i) .... A defendant’s or claimant’s offer to arbitrate shall not be used in evidence or in argument during any subsequent litigation of the claim following the rejection thereof.
[[Image here]]
(k) Any offer by a claimant to arbitrate must be made to each defendant against whom the claimant has made a claim. Any offer by a defendant to arbitrate must be made to each claimant who has joined in the notice of intent to initiate litigation, as provided in s. 766.106....
(1) The hearing shall be conducted by all of the arbitrators, but a majority may determine any question of fact and render a final decision. The chief arbitrator shall decide all evidentiary matters.
[[Image here]]
(9) The Division of Administrative Hearings is authorized to promulgate rules to effect the orderly and efficient processing of the arbitration procedures of ss. 766.201-766.212.
(10) Rules promulgated by the Division of Administrative Hearings pursuant to this section, s. 120.53, or s. 120.65 may authorize any reasonable sanctions except contempt for violation of the rules of the division or failure to comply with a reasonable order issued by a hearing officer, which is not under judicial review.
[[Image here]]
766.209 Effects of failure to offer or accept voluntary binding arbitration.—
[[Image here]]
(2) If neither party requests or agrees to voluntary binding arbitration, the claim shall proceed to trial or to any available legal alternative....
(3) If the defendant refuses a claimant’s offer of voluntary binding arbitration:
(a) The claim shall proceed to trial without limitation on damages, and the claimant, upon proving medical negligence, shall be entitled to recover prejudgment interest, and reasonable attorney’s fees up to 25 percent of the award reduced to present value.
(b) The claimant’s award at trial shall be reduced by any damages recovered by the claimant from arbitrating codefendants following arbitration.
(4) If the claimant rejects a defendant’s offer to enter voluntary binding arbitration:
(a) The damages awardable at trial shall be limited to net economic damages, plus noneconomic damages not to exceed $350,-000 per incident....
(b) Net economic damages reduced to present value shall be awardable, including, but not limited to, past and future medical expenses and 80 percent of wage *1196 loss and loss of earning capacity, offset by any collateral source payments.
(c) Damages for future economic losses shall be awarded to be paid by periodic payments pursuant to s. 766.202(8), and shall be offset by future collateral source payments.
[[Image here]]
766.212 Appeal of arbitration awards and allocations of financial responsibility-—
(1) An arbitration award ... [is] final agency action for purposes of s. 120.68. Any appeal shall be taken to the district court of appeal for the district in which the arbitration took place, shall be limited to review of the record, and shall otherwise proceed in accordance with s. 120.68. The amount of an arbitration award ..., the evidence in support of [it], and the procedure by which [it] is determined are subject to judicial scrutiny only in a proceeding instituted pursuant to this subsection.
[[Image here]]
(3) Any party to an arbitration proceeding may enforce an arbitration award ... by filing a petition in the circuit court for the circuit in which the arbitration took place. A petition may not be granted unless the time for appeal has expired. If an appeal has been taken, a petition may not be granted with respect to an arbitration award ... that has been stayed.
(4) If the petitioner establishes the authenticity of the arbitration award ..., shows that the time for appeal has expired, and demonstrates that no stay is in place, the court shall enter such orders and judgments as are required to carry out the terms of the arbitration award.... Such orders are enforceable by the contempt powers of the court; and execution will issue, upon the request of a party, for such judgments.
As should be apparent from the foregoing, much of that portion of section 766.106 relating to voluntary binding arbitration of damages is inconsistent, and irreconcilable, with the provisions of sections 766.207 through 766.212.
Adding to the confusion created by the inconsistencies between section 766.106 and sections 766.207 through 766.212 is the fact that the parties elected not to follow either procedure in all details. Instead, they chose to arbitrate using what might best be described as a hybrid of the two. In particular, they appear to have decided that, while most of the provisions of section 766.207 would be followed, some very important provisions would not — no hearing officer from the Division of Administrative Hearings participated in the arbitration, and the arbitration was not conducted according to the rules promulgated by the Division. Instead, as provided by section 766.106(10)(b), appellants and appellees each selected one arbitrator, and those two then decided upon the third. All three arbitrators were attorneys in private practice, with extensive experience in medical malpractice litigation.
We conclude that the parties’ failure to comply with the provisions of section 766.207(4) requiring that “the chief arbitrator” be a hearing officer from the Division of Administrative Hearings precludes the parties from relying, on appeal, on the arbitration scheme set out in sections 766.207 through 766.212. It is clear that participation by a hearing officer in the arbitration process was intended by the legislature to be a critical feature of the arbitration scheme set out in those sections. This is why, for instance, it is specified that “evidentiary standards” shall be those found in section 120.58(l)(a) of the Administrative Procedure Act. § 766.207(2), Fla.Stat. (1993). It is also why the Division of Administrative Hearings is authorized to adopt rules applicable to the process. § 766.207(9), Fla.Stat. (1993). (In fact, the Division of Administrative Hearings has adopted an entire chapter of detailed rules for arbitration pursuant to sections 766.207 through 766.212. Ch. 60Q-3, Fla.Admin.Code.) Finally, it is the only explanation for section 766.212(1), which states that an arbitration award is “final agency action for purposes of s. 120.68,” and provides, as in administrative matters, for review by a district court of appeal, rather than by a circuit court. We conclude, instead, that, for purposes of this appeal, we will refer to the applicable provisions of section 766.106 and, “[t]o the extent not inconsistent ..., the provisions of chapter 682, the Florida Arbi *1197 tration Code; (1993). § 766.106(12), Fla.Stat.
We conclude, further, that the trial court did not err in denying appellants’ motion to dismiss, for lack of subject matter jurisdiction, appellees’ motion for confirmation of the arbitration award. Appellees’ motion to confirm the award was made pursuant to the Florida Arbitration Code, section 682.12 of which provides for confirmation of awards “[u]pon application of a party to the arbitration,” unless a timely motion to vacate, modify or correct the award has been filed. See §§ 682.13, 682.14, Fla.Stat. (1993). The essence of appellants’ motion to dismiss was that the circuit court lacked jurisdiction because the procedure for enforcement of an arbitration award such as that at issue was set forth in section 766.212, rather than in the Arbitration Code, and appellees had failed to establish that they were entitled to enforcement pursuant to that section. As discussed above, we have concluded that the parties are precluded from relying, on appeal, on the arbitration scheme set out in sections 766.207 through 766.212. Instead, we will look to section 766.106 and, to the extent not inconsistent with section 766.106, the Arbitration Code. We find nothing in section 766.106 to suggest that the provisions of the Arbitration Code relating to confirmation of awards not be applied. Accordingly, the circuit court correctly denied appellants’ motion to dismiss appellees’ motion to confirm the award.
We also conclude that the circuit court correctly refused to relieve appellants of all liability for future economic damages, notwithstanding the purchase by appellants of an annuity designed to ensure the payment of such sums. Resolution of this issue requires construction of section 766.202(8), Florida Statutes (1993), which the parties agree was properly considered by the arbitrators in arriving at the periodic payments required on account of future economic damages to be experienced by appellees. To the extent relevant, that subsection reads:
(8) “Periodic payment” means provision for the structuring of future economic damage payments, in whole or in part, over a period of time, as follows:
(a) A specific finding of the dollar amount of periodic payments which will compensate for these future damages after offset for collateral sources shall be made. The total dollar amount of the periodic payments shall equal the dollar amount of all such future damages before any reduction to present value.
(b) The defendant shall be required to post a bond or security or otherwise to assure full payment of these damages awarded. A bond is not adequate unless it is written by a company authorized to do business in this state and is rated A+ by Best’s. If the defendant is unable to adequately assure full payment of the damages, all damages, reduced to present value, shall be paid to the claimant in a lump sum. No bond may be canceled or be subject to cancellation unless at least 60 days’ advance written notice is filed with the court and the claimant. Upon termination of periodic payments, the security, or so much as remains, shall be returned to the defendant.
It is undisputed that appellants have satisfied all monetary obligations imposed by the arbitration award except for future economic damages, which, according to the award, are to be paid in specified annual amounts through the year 2018. In an apparent effort to avoid having to pay the full amount of future economic damages, reduced to them present value, in a lump sum, as contemplated by section 766.202(8)(b), appellants offered to purchase an annuity from TransAmerica Occidental Life Insurance Company to guarantee that the future periodic payments would be made. (According to the evidence presented, TransAmerica was rated A+ by Best’s, and was “one of the highest rated companies offering annuities to fund structured settlements.”) However, appellants also argued to the circuit court (and argue on appeal) that, upon posting security acceptable pursuant to section 766.202(8)(b) to permit periodic payments (as opposed to a lump-sum payment) of future economic damages, appellees could be required to accept such security in full satisfaction of the award of future economic damages, and appellants would be entitled to be relieved of any fur *1198 ther liability for such damages. The circuit court held that the annuity would be satisfactory “security” pursuant to section 766.202(8)(b) to permit periodic payments of future economic damages, as opposed to a lump-sum payment. However, it refused to relieve appellants of all liability for future economic damages, concluding, instead, that they would remain contingently liable because of the possibility that, for some reason, the payments contemplated by the annuity might not all be timely made.
We find nothing in section 766.202(8)(b) to support appellants’ argument that, by posting “security” satisfactory to permit periodic payments of future economic damages, they are entitled to be relieved of all further liability for such damages. On the contrary, it seems to us from a reading of the language used by the legislature that the sole intent behind section 766.202(8)(b) was to permit defendants to avoid having to pay the entire amount of future economic damages, reduced to present value, in a lump sum. Had the legislature intended that posting of a satisfactory “bond or security” would relieve defendants of all further liability for future economic damages, it would have been an easy matter for it to have said so. In our opinion, the absence of any such language is strong evidence that the legislature did not intend the result urged by appellants. To presume such an intent in these circumstances would amount to the most blatant form of judicial legislation. We decline appellants’ invitation to don the legislative mantle.
The third and final issue raised by appellants is whether the arbitrators’ order setting the discount rate and the calculation date for future economic damages was imper-missibly predicated upon an unauthorized consideration of new evidence. The record does not reflect that this issue was raised before either the arbitrators or the circuit court. Accordingly, it would appear that the issue has not been preserved for review. However, assuming that the issue is properly before us, it is clear that the matter complained of by appellants is not the type of action for which judicial review is appropriate. Arbitrators are not constrained by formal rules of evidence or procedure. Rather, they enjoy wide latitude in the conduct of proceedings. Moreover, they are the final judges of such matters as the admissibility and relevance of evidence. See, e.g., Hoteles Condado Beach, La Concha and Convention Center v. Union De Tronquistas Local 901, 763 F.2d 34 (1st Cir.1985); Sorren v. Kumble, 578 So.2d 836 (Fla. 3d DCA 1991); Lake County Education Association v. School Board of Lake County, 360 So.2d 1280 (Fla. 2d DCA), cert. denied, 366 So.2d 882 (Fla. 1978). “[T]he standard of judicial review applicable to challenges of an arbitration award is very limited, with a high degree of conelusiveness attaching to an arbitration award.” Applewhite v. Sheen Financial Resources, Inc., 608 So.2d 80, 83 (Fla. 4th DCA 1992). We conclude that the arbitrators’ decision to accept additional evidence on the discount rate and the calculation date for future economic damages was the kind of decision which they, alone, had the final authority to make. Therefore, we see no reason to disturb that decision.
The first issue raised by appellees on their cross-appeal is whether the circuit court erred when it declined to enter a final judgment against appellants. We have previously concluded that purchase of an annuity by appellants to secure periodic payments of future economic damages does not relieve appellants of liability for such payments. Instead, appellants remain contingently liable, which contingency will mature should any future payment not be timely made. We have also previously concluded that, to the extent not inconsistent with section 766.106, the provisions of the Arbitration Code apply in this case. In relevant part, section 682.15 states that, “[u]pon the granting of an order confirming, modifying or correcting an award, judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree.” We see no inconsistency between section 682.15 and section 766.106. Accordingly, upon confirmation of the arbitration award by the circuit court, appellees were entitled to the entry of “judgment ... in conformity therewith.” On remand, we direct the circuit court to enter judgment for appellees consistent with the *1199 provisions of the arbitration award regarding periodic payments of future economic damages. (It is undisputed that all other monetary obligations imposed by the award have been satisfied.) However, the judgment shall provide that appellees are prohibited from attempting to execute on it until and unless a future payment is not timely made.
The second, and final, issue raised by appellees on their cross-appeal is whether the circuit court erroneously denied their motion to join appellants’ liability insurer. In that motion, appellees represented that appellants were insured by American Continental Insurance Company, and that the coverage afforded was in an amount greater than that of their recovery. Appellees argued that they were entitled to join the insurer pursuant to section 627.4136(4), Florida Statutes (1993), which, to the extent relevant, provides:
(4) At the time a judgment is entered or a settlement is reached during the pen-dency of litigation, a liability insurer may be joined as a party defendant for the purposes of entering final judgment or enforcing the settlement by the motion of any party, unless the insurer denied coverage under the provisions of s. 627.426(2) or defended under a reservation of rights pursuant to s. 627.426(2). A copy of the motion to join the insurer shall be served on the insurer....
Appellants responded that section 627.4136(4) was inapplicable, because no “settlement” was involved, and no “judgment” had been entered. In its order denying the motion, the circuit court found “that American Continental Insurance Company provided liability insurance coverage to the [appellants] and is obligated pursuant to its contracts of insurance to indemnify the [appellants] for the full amount awarded to the [appellees] in the Arbitration Award.” However, it accepted appellants’ argument and, because it had declined to enter a judgment in favor of appellees, it concluded that appel-lees were not entitled to join the insurer. Because we are directing the circuit court, on remand, to enter a judgment in favor of appellees consistent -with the provisions of the arbitration award regarding periodic payments of future economic damages, we also reverse the circuit court’s order denying join-der of appellants’ liability insurer. On remand, the circuit court shall grant that motion, unless American Continental Insurance Company is able to satisfy it either that coverage had been denied, or that appellants’ defense had been undertaken subject to a valid reservation of rights. § 627.4136(4), Fla.Stat. (1993).
In summary, we affirm as to the three issues raised by appellants. However, we reverse and remand as to both issues raised by appellees on their cross-appeal. On remand, the circuit court shall enter judgment for appellees consistent with the provisions of the arbitration award regarding periodic payments of future economic damages. However, the judgment shall provide that appellees are prohibited from attempting to execute on it until and unless a future payment is not timely made. The circuit court shall also grant appellees’ motion to join appellants’ liability insurer, unless the insurer is able to satisfy it either that coverage had been denied, or that appellants’ defense had been undertaken subject to a valid reservation of rights.
AFFIRMED IN PART; REVERSED IN PART; and REMANDED, with directions.
MICKLE and VAN NORTWICK, JJ., concur.